RUSSELL M. LAKENAN, Executor, *et al.*, Respondents, **v.** HANNIBAL & ST. JOSEPH RAILROAD COMPANY *et al.*, Appellants.

St. Louis Court of Appeals, May 14, 1889.

1. **Roads:** EASEMENTS: ESTOPPEL. A defendant who acquires his title through a deed from the plaintiff, which expressly reserves a right of way through the land, is estopped by the deed from closing the right of way thus reserved.

2. ————. A railroad company having maintained a railway crossing across its tracks through a farm, its subsequent purchase of that portion of the farm lying on one side of its tracks, subject to the existing private way from said crossing, across said land, to the county road, can not close said crossing so as to obstruct the entrance to said private way.

3. ————: DEEDS, CONSTRUCTION OF. The intention of the parties to a deed will be determined from the language of the entire deed, taken in connection with the circumstances under which it was made.

4. ————: INJUNCTION : CONTINUING WRONG. Injunction will lie to restrain the wrongful closing of a private way which furnishes the only convenient egress from the plaintiff's land to the public highway, although the act which prevents such egress has been committed.

*Appeal from the Shelby County Circuit Court.*—Hon. Preston B. Dunn, Special Judge.

Affirmed.

*Huston & Parrish*, for the appellants.

The right to the "farm crossing" perished with the sale of the land on one side of the railroad. R. S., sec. 809. The decree is erroneous, in that it attempts to compel the railroad company to maintain what was a legitimate farm crossing as and for a mere private way, after its use as a farm crossing has ceased, without compensation. This would be taking private property for private way, and that, too, without compensation. Const. of Mo. 1875, sec. 20, art. 2; R. S. 1879, chap. 70, p. 677. The lower court erred in admitting testimony of the fact that the Lakenans owned other lands north of the railroad, and that this road was one of convenience or necessity. If the defendant was not obliged to maintain it as a farm crossing after plaintiff had sold and conveyed that portion of the farm on the south side of the railroad, then though convenient or necessary to respondents, it could only be obtained by them under the laws applicable to public roads or private ways, and there was an adequate remedy provided. Const. of Mo. 1875, sec. 20, art. 2; R. S. 1879, chap. 70, p. 677; *Cox v. Tipton*, 18 Mo. App. 450. An exception excludes from the general terms of a grant some specific part of the thing granted—as one acre out of a certain farm or tract. This language expressly conveys all—"subject to"—no part of the thing granted is withheld. It is not a reservation, because that must be of something which is then created and which did not before exist, and this must be to the grantor—can not be to any one else. As executor, R. M. Lakenan could not reserve

anything out of the land to himself. 3 Wash. Real Prop. (5 Ed.) 440 ; *Ascraft v. Railroad*, 126 Mass. 196 ; *Murphy v. Lee*, 144 Mass. 371.

*R. M. Lakenan*, for the respondents.

The objection that the executor could not reserve anything for himself is entirely irrelevant. The deed, in evidence, shows that the land conveyed was simply a parcel of a large tract, owned by the devisees and the reservation or recital was there for their benefit as such owners, and they brought the suit. Courts will look to the object which the parties had in view. *Hovey v. Pitcher*, 13 Mo. 191 ; *Jones v. DeLassus*, 84 Mo. 541 and 545. The appellant claims that the expression "subject to" is a limitation on the words "grant, bargain, and sell," contained in the deed. But the deed contains no such words. The deed does not say "grant, bargain, and sell." It says "bargain, sell, and convey." Those words do not imply a covenant. *Valle v. Clemens*, 18 Mo. 486 and 489 ; *Gibson v. Chouteau*, 39 Mo. 536. The grantee is bound by the recitals in the deed under which he claims. *Clamorgan v. Greene*, 32 Mo. 285 ; *Dickson v. Anderson*, 9 Mo. 156. The explicit description of the private way, its location, width, and its beginning and ending, prove the full intention to preserve a private way as indicated. The modern rule is to look to the whole deed for the intent. This rule dominates every other process of construction. By this rule the deed operates as a reservation of the private way described. As to the general principle, see *County of Johnson v. Wood*, 84 Mo. 489, 509 ; *Shickle v. Chouteau*, 84 Mo. 161. The correlative obligation to respect the private way is necessarily implied. *Lewis v. Atlas*, 61 Mo. 534. The cases which rule upon the effect of recitals of undertaking by the grantor in a deed : *Fitzgerald v. Barker*, 85 Mo. 13 ; s. c., 70 Mo.

685. It is immemorial law that a party can not claim title under a deed and at the same time deny truth of a recital in such deed. He is estopped. *Douglas v. Scott*, 5 Ohio, 194; *Pershing v. Canfield*, 70 Mo. 140, 142 foot; *Hundley v. Filbert*, 73 Mo. 34, and cases cited; *Hazenritter v. Kirchhoffer*, 79 Mo. 229; *Hannibal v. Greene*, 68 Mo. 169; *St. Louis v. Wiggins*, 15 Mo. App. 227. Whether viewed as a reservation or a recital the clause defining the private way is effective against the grantee. See specially Bigelow on Estoppel [2 Ed.] 270, note 4, citing *Freemen v. Auld*, 44 N. Y. 50, p. 271, note 2; pp. 272 and 273. The testimony of R. M. Lakenan, the executor, was properly admitted to show the moving consideration of the deed. Such testimony is always admissible ( *Dobyns v. Rice*, 22 Mo. App. 448, 455 ), and the surrounding circumstances are often of controlling importance. *Dobyns v. Edmunds*, 18 Mo. App. 307, 315.

THOMPSON, J., delivered the opinion of the court.

This is a suit in equity to restrain the defendants from obstructing a farm crossing over the railroad of the principal defendant, and also from obstructing a private way leading from the farm crossing to a public highway. The circuit court, on a hearing of the issues, rendered a decree granting the relief prayed for and the defendants appeal to this court. The principal plaintiff is the executor of the estate of Robert F. Lakenan, deceased, and the other plaintiffs are devisees under his will. The defendants are the Hannibal and St. Joseph Railroad Company; C. M. Carter, who holds the legal title to a tract of land purchased of the plaintiff executor, for the railroad company; and Clemin A. Hamilton, who is a tenant of the land under the railroad company. The facts on which the plaintiffs predicate their right to an injunction are established beyond

controversy. They are stated in the petition, proved by the evidence as stated, and found by the court and recited in its decree as proved. Omitting what seems unnecessary to be stated, they are as follows :—

In 1854 the defendant railroad company acquired by deed a fee-simple title to a "right of way," being a strip of land one hundred feet wide, running diagonally from southeast to northwest, through a quarter section of land which for convenience will be designated in this opinion as "the quarter section in controversy," leaving about one hundred and seven acres of the tract on its north side and about fifty-three acres of it on its south side. In 1860, Robert F. Lakenan acquired by deed the fee-simple title to this quarter section of land, and also to several tracts of adjoining land. The land thus acquired was used and cultivated as a single farm, there being about seven hundred and seventy acres on the north side of the railroad and fifty-three acres on the south side of the railroad, the latter being the portion cut off by the railroad in passing through the quarter section in controversy. The railroad had established and always maintained a farm crossing about the middle of that section of its road which passed through the quarter section in controversy. The house of the late Robert F. Lakenan stood near the center of this quarter section at some distance north of the railroad, and a private way, leading from his house directly south, passed over this farm crossing, thence through the fifty-three acres, which lay south of the railroad, to a public road which had been established in 1866, and which ran east and west on the southern side of the quarter section in controversy. In 1883, Robert F. Lakenan died, leaving a will, under which the plaintiff, Russell M. Lakenan, became his executor, with power to sell the lands belonging to his estate. In 1886, the defendant railroad company, desiring to become the purchaser of

the fifty-three acres lying south of its railroad, already spoken of, entered into negotiations with Russell M. Lakenan, executor, through Charles W. Cox, its agent, with that end in view. The railroad company desired to become the purchaser of the land free from any incumbrance of a private way over it; but Mr. Lakenan refused to sell on any terms unless the purchaser would take it subject to a private way leading south from the farm crossing to the public highway. The railroad company finally yielded the point, and the deed was made out to Mr. Cox, conveying this and another tract, which lay south of the railway, to him, "subject to all ways existing on said lands, or any part thereof, including a private way twenty feet wide, running due south from the railway crossing of said railway, across said northwest quarter of section eight to the county road." Thereafter Mr. Cox conveyed the land to the defendant Carter, as trustee for the defendant railroad company. The defendant Hamilton thereafter became a lessee thereof under the company, went into possession, closed the passages with a rail fence and afterwards plowed up the right of way reserved in the deed and planted the ground with crops. The railroad company afterwards took out the gates and put in a fence post between the posts of each gate and nailed bars across. The railway company avowed responsibility for Mr. Hamilton's action and denied the plaintiff's application to have the crossing and the private way kept open.

A map of the township is subjoined, showing the position of the tract of land composing the farm of Robert F. Lakenan, deceased, lying north of the railway with reference to the railroad, the farm crossing, the private way, and the public highway above spoken of:

Lakenan, Ex'r, v. Hannibal & St. J. Ry. Co.

It appears from the evidence that the distance from the mansion house of the deceased to the public highway, on the private way, and across the farm crossing to the south, is but little more than a quarter of a mile; whereas, in order to reach the same point on the public highway, any one going from the mansion house, is obliged, now that the farm crossing and private way are closed, to perform a circuit of about a mile and a half, and to cross the railway over the farm crossing in the farm of another proprietor, which the plaintiffs are permitted to use through the mere favor of such proprietor, which favor he could withdraw from them at any time.

The case seems to be a simple one. The defendants having acquired their title to, and interest in, the fifty-three acres south of the railroad through a deed from the principal plaintiff, which expressly reserves a right of way twenty feet wide from the farm crossing due south to the public highway, are estopped by the deed from shutting up the private way thus reserved. The argument, that the reservation of this right of way is void for uncertainty, is too idle for discussion. It is as certain as words can make it. It could not be stated on paper with greater certainty, and no surveyor could have the least difficulty in staking it out. They have exhibited no color of right to plow it up, or obstruct it; but, so far as the evidence shows, have, in doing so, acted in the most wanton violation of the rights of the plaintiffs.

Then as to the railway crossing. The argument that a railway crossing can exist only for the benefit of a farm proprietor, who owns the land on *both sides*, is equally fallacious; for the plaintiffs do own the land on both sides sufficiently to support this rule, if it be a correct interpretation of section 809, Revised Statutes. They own the farm consisting of some seven hundred and seventy acres on the north, and they own the private way twenty feet wide from the railway crossing south to the public highway. It is quite immaterial to their

rights whether they own the fee of the twenty feet of ground reserved for this private way in the deed of the executor to Cox, or whether they merely own an easement of way over that strip of ground. In either event, they reserved to themselves the right to go upon it in order to get out upon the public highway, and for this purpose it is necessary for them to cross the railway at the farm crossing ; they can reach the private way in no other direction. The railway company has, therefore, no right to shut up the farm crossing and obstruct their rightful entrance to their private way. Their right to have the farm crossing maintained to give them egress over this private way is just as strong as it was before they made the deed to Cox. It is not .necessary, as counsel for the appellants suppose to enter into any of the technical learning of the law of real property for the purpose of determining the right of the parties under this deed. The deed means what it says. It is our duty to read it as we read any other contract, for the purpose of discovering in its language the intention of the parties to it ; and that intention appears with perfect distinctness. In interpreting any deed or other contract, resort may always be had to the circumstances under which it was made, such circumstances being known to the parties to it. This deed can not be read in connection with the foregoing map, without the conclusion unmistakably appearing that it was the intention of both parties to the deed that the private way, leading southward from the Lakenan mansion across the railway at the farm crossing to the public highway, should continue to exist, as it had theretofore existed. If such was not the intention of the railway company when it procured the deed to Cox, then the conclusion is unavoidable that it was a fraudulent contrivance on the part of its agent to give a color of justification to the oppressive act which it subsequently committed in closing up the farm crossing and appropriating the right of way which was reserved in the deed.

The argument that the plaintiffs are not entitled to relief by injunction, because the act which they seek to enjoin has been already committed, comes, to say the least, with poor grace from the defendants. The wrong committed by them is a continuing wrong and could not be righted by an action of ejectment or of forcible entry or detainer; for neither of these actions would open the farm crossing. It could not with certainty be recompensed in an action for damages; for such damages would, for the most part, be grounded on a future deprivation of the right of way, and would not be capable of an approximate assessment. Besides, they are entitled to the enjoyment of this easement in kind, and the law does not oblige them to submit to a tortious expropriation of it by the defendants in exchange for such damages as a jury may see fit to give them. The statute provides that "the remedy of injunction  *  *  * shall exist in all cases where an injury to real or personal property is threatened, and to prevent the doing of any legal wrong, whatever, whenever in the opinion of the court an adequate remedy can not be afforded by an action for damages." R. S., sec. 2722. Such, we think, is the present case. *Turner v. Stewart,* 78 Mo. 480; *State Savings Bank v. Kercheval,* 65 Mo. 682; *Echelkamp v. Schrader,* 45 Mo. 505; *McPike v. West,* 71 Mo. 199. It has always been held in this state that a private corporation may have an injunction against another private corporation to prevent it from appropriating a public wharf under an *ultra vires* lease from the city. *Belcher Sugar Refining Co. v. Elevator Co.,* 82 Mo. 121. The same court has held that an abutting lot owner, sustaining special damage from an improper appropriation by a railway company of a street, is entitled to an injunction to restrain such use. *Dubach v. Railroad,* 89 Mo. 483. Numerous cases may be cited to show that injunction is an appropriate remedy to restrain the obstruction of a *public highway* on behalf

of an abutting or adjacent property-owner, suffering a special injury by the obstruction. *Craig v. People*, 47 Ill. 487; *Corning v. Lowerre*, 6 Johns. Ch. 439; *Pettibone v. Hamilton*, 40 Wis. 402; *Green v. Oakes*, 17 Ill. 249; *Mohawk Bridge Co. v. Railroad*, 6 Paige 563; *Jerome v. Ross*, 7 Johns. Ch. 322; *Crenshaw v. State River Co.*, 6 Rand. 245. Such an injunction has been upheld when granted at the suit of an incorporated town. *Burlington v. Schwarzman*, 52 Conn. 181; s. c., 52 Am. Rep. 571. For even stronger reasons a private land-owner may claim this remedy to restrain the shutting up of a private way which furnishes the only convenient egress from his land to the public highway. In *Hall v. Roode*, 40 Mich. 46; s. c., 29 Am. Rep. 528, an injunction was granted at the instance of the owner of a private alley to restrain an encroachment of *three inches* upon the alley after a previous encroachment of eight inches.

The judgment will be affirmed. All the judges concur.