THE STATE SAVINGS BANK v. KERCHEVAL ET AL. APPELLANTS.

1.  **Fixtures, as between Mortgagee and Mortgagor.**  In determining whether an improvement upon land is a fixture, neither the intention of the person who put it there ultimately to remove it, nor the manner in which it is placed upon the land is a controlling fact; a good deal depends upon the object of its erection and the use for which it was designed. As between mortgagee and mortgagor a frame building erected by the side of a mill for use as an office in connection with the mill, is part of the realty, although erected after the mortgage was given, intended to be temporary only and to be ultimately removed, and not attached to the mill, nor fixed to the ground, but resting upon wooden blocks sitting upon the surface of the earth.

2.  **Injunction:**  WHEN. THE PROPER REMEDY TO PREVENT TRESPASSES. Under the statute (Wag. Stat. 1032 § 24) in order to obtain an injunction, it is not necessary to show that a threatened injury is

irreparable. It is sufficient if there is no adequate remedy by action for damages. Hence, a trespasser engaged in removing a building, which is necessary to the convenient use of another building, will be restrained from the prosecution of his purpose, at the suit of one having an interest in the property, although the trespasser be a person of undoubted solvency. Such a trespass may produce inconveniences and perplexities for which a jury could not, under the rules of law, give full compensation.

*Appeal from Buchanan Circuit Court*—HON. JOS. P. GRUBB, Judge.

This was a suit to enjoin defendants from removing a frame building. The petition stated that defendant Kercheval was the owner of certain lots, which he had conveyed to a trustee for plaintiff, together with all the fixtures, machinery and other articles on the lots, composing a complete flouring mill; that this conveyance was made to secure loans of money made by plaintiff to defendant, Kercheval, who had since become insolvent, leaving a large amount due plaintiff; that plaintiff had no means of collecting his debt other than this property, which was also heavily encumbered by tax liens and a prior deed of trust; that on said lots and attached to said mill there was a certain frame building, which defendants were about to tear down and remove from the lots, thus injuring the mill building and lessening the value of plaintiff's security; that defendant Allen had no right, title or interest in the lots or any of the appurtenances; that, in view of the financial condition of defendant Kercheval, and of the amount of indebtedness secured on the mill and lots and the value thereof, the damage to plaintiff would be irreparable, unless defendants were restrained from injuring the property. To this petition defendants filed separate answers.

Upon the trial it appeared that defendant Kercheval was the owner of the lots and mill, and had borrowed money and given deeds of trust on them, and that plaintiff was the holder of the notes secured by these deeds of

trust. It also appeared that, after they were given, defendant Allen had erected on the lots the frame building in question, to be used, in connection with the mill, as an office ; that, not having been paid for the labor and material put into it, he took a bill of sale of it from defendant Kercheval, by way of payment, and was proceeding, with Kercheval's consent, to remove the building on the day when the plaintiff was about to sell under his deeds of trust ; that the mill was a brick building ; that the frame was separated from it by a space about three feet wide, and was only connected with it by a wooden pavement laid between the outer doors of the two buildings ; that the frame was built on blocks set on the surface of the ground ; that it was a temporary affair, built with the intention of being removed ; that it was used as an office only, and there was never any machinery of the mill in it. It also appeared that defendant Kercheval was insolvent, but there was no evidence as to the financial condition of defendant Allen. The court decreed a perpetual injunction, and defendants appealed.

*E. O. Hill* for appellants.

1.  The petition shows upon its face that plaintiff had a perfect, complete and adequate remedy at law for all the injuries complained of. *Burgess v. Kattleman*, 41 Mo. 480 ; *Hopkins v. Lovell*, 47 Mo. 102 ; *Sayre v. Tompkins*, 23 Mo. 443 ; *Echelkamp v. Schrader*, 45 Mo. 505 ; *James v. Dixon*, 20 Mo. 79 ; *State v. Parkville & G. R. R. R. Co.*, 32 Mo. 496. There is no averment in the bill that defendant, Allen, is insolvent, and not a word of evidence offered on the trial touching his inability to pay any and all judgments that might be rendered against him in the case.

2.  It is not sufficient that the bill contains mere general averments of irreparable mischief. The facts constituting such mischief should be set forth. High on Injunctions, 1st Edition, page 340, sec. 461. There is not a fact set forth in the bill showing any damage whatever

to plaintiff, to be irreparable. The only allegation in the bill is "that in view of the said financial condition of said Kercheval, and in view of the amount of indebtedness secured on said mill and lots, and the value thereof, the damage to plaintiff will be irreparable."

*B. Pike and H. K. White* for respondent.

1. Plaintiff's mortgage called for a complete flouring mill. The office used when the mortgage was given, was at the time of the suit used for machinery, and the frame building had taken its place, and was necessary to the mill. It was part of the realty, and plaintiff's mortgage attached to it, even though executed prior to the erection of the building. *Rogers v. Crow*, 40 Mo. 91; *Hoskin v. Woodward*, 45 Pa. Stat. 42. Between vendor and vendee, and mortgagor and mortgagee, any annexation to the realty or appurtenance however slight, is sufficient. The fixture need not be attached so that detaching will disturb the soil or rend any part of the building. · *Walker v. Sherman*, 20 Wend. 636.

2. The injunction was properly granted, independent of our statutory provisions. The injunction will be granted, even though an action for damages at law will lie when the remedy at law is not as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. *Clark v. R. R. Co.*, 44 Ind. 248; *Watson v. Sutherland*, 5 Wall. 74; *Carpenter v. Grisham*, 59 Mo. 251; *Winslow v. Nayson*, 113 Mass. 411.

3. The statute has, in a measure, relaxed the old rule, and injunctions may now issue when the relief consists in restraining the commission of an act which would produce injury to the plaintiff, and in all cases when an injury is threatened to real property, an injunction may issue when an adequate remedy cannot be afforded by an action for damages. The value of the frame building, even if recoverable from defendant, Allen, by suit at law, would be no adequate remedy for loss of time and business to a purcha-

ser of the mortgaged property for want of an office in which to transact its business, and consequent depreciation to a bidder at plaintiff's sale. The injunction, therefore, afforded a more practical and efficient remedy for the prompt administration of justice. 2 Wag. Stat., pp. 1029 and 1032, secs. 4 and 24; *Clark v. R. R. Co., supra.*

HENRY, J.—The questions for consideration here are :

1st.  Was the building which it is alleged the defendants were about to remove, personal property?

2nd.  If not, would an action for damages have afforded an adequate remedy ?

It must be admitted that the law in regard to fixtures is in a somewhat chaotic state. It is frequently difficult to determine, upon principle, whether an article of property is a fixture or not. There is a most embarrassing conflict in the adjudged cases. On grounds of public policy, to encourage trade, manufactures and agriculture, many things are regarded as chattels in controversies between landlords and tenants, which would unquestionably be held as fixtures, as between vendor and vendee; and the same rule prevails between mortgagor and mortgagee, as between grantor and grantee. In determining whether a building is part of and passes with the land, a good deal depends upon the object of its erection, the use for which it was designed. The intention of the party making the improvement, ultimately to remove it from the premises, will not, by any means, be a controlling fact. One may erect a brick or a stone house, with an intention, after brief occupancy, to tear it down and build another on the same spot, but that intention would not make the building a chattel. " The destination which gives a movable object an immovable character, results from facts and circumstances determined by the law itself, and could neither be established nor taken away by the simple declaration of the proprietor, whether oral or written." *Snedcker v. Warring,* 2 Kernan 178. In *Goff v. O'Conner,* 16 Ill.

422, the court said: "Houses in common intendment of the law, are not fixtures, but part of the land. * * This does not depend, in the case of houses, so much upon the particular mode of attaching, or fixing and connecting them with the land, upon which they stand or rest, as upon the uses and purposes for which they were erected and designed." In *Cole v. Stewart*, 11 Cush. 182, the building was intended by the owner to be temporary, and was built with a view to ultimate removal. In a contest between the mortagee, whose mortgage was executed subsequent to the erection of the house, and a purchaser of the building from the mortagor, it was held to be a fixture. In the light of these cases, and many others which we have examined, we do not regard the fact, that the building in question, was erected as a temporary building, and with an intention of ultimate removal, at all decisive as to whether it became a part of the realty or not.

The manner in which a building is placed upon land, whether upon wooden posts, or a rock, or brick foundation, does not determine its character. As was said by Parker, J., in *Snedeker v. Warring*, above cited: "A thing may be as firmly fixed to the land by gravitation as by clamps or cement. Its character may depend upon the object of its erection." In *Teaff v. Hewett*, 1 Ohio St. 511, it was held that: "The intention of the party making the annexation to make the article a permanent accession to the freehold, this intention to be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation and the purpose and use for which the annexation has been made," is a controlling circumstance in determining whether the structure is to be regarded as a fixture or not. In the case of *Benjamin F. Butler, Adm. v. Page*, 7 Met. 42, Shaw, C. J., delivering the opinion of the court, said: "All buildings erected and fixtures placed on mortgaged premises by the mortgagor, must be regarded as permanently annexed to the freehold. They go to en-

hance the value of the estate, and will therefore enure, to the benefit of the mortgagee so far as they increase his security for his debt, and to the same extent they enhance the value of the equity of redemption, and thereby enure to the benefit of the mortgagor." In controversies between mortgagor and mortgagee the rule is more favorable to the mortgagee in relation to fixtures than that which is applied as between landlord and tenant, and, applying the principles announced in the cases which we have cited, which we believe to be sound and salutory, we must hold that the building in question was a part of the realty, and that neither the mortgagor, nor the purchaser from him has a right to remove it. It becomes a part of the plaintiff's security for its debt.

The remaining question is, did the facts alleged in the petition warrant the court in restraining the parties by injunction from removing the building. It is not essential that the injury threatened shall be irreparable, to warrant a resort to the remedy by injunction. Our statute provides, sec. 24, page 1,032, Wag. Stat., that " the remedy by writ of injunction shall exist in all cases, when an injury to real or personal property is threatened, and to prevent the doing of any legal wrong whatever, whenever, in the opinion of the court, an adequate remedy. cannot be afforded by an action for damages." Would an action for damages here have afforded an adequate remedy, is the question, and not whether the threatened injury would have been irreparable. The building was erected to be used in connection with, and as an office, for the mill. It was erected to supply the place of an office formerly used, which had been appropriated to another purpose. Its immediate and constant use was of importance to the milling business. The value of the building which a jury might have given as damages would not have been a sufficient compensation to the owner for its removal. The defendant Allen may have been solvent, amply able to respond in damages for his trespass, but it does not there-

fore follow that he could not be restrained from severing from the land a house which belonged, not to him, but to the owner of the land. If a man of large fortune, so wealthy as to place beyond a doubt his ability to pay any damages which might be assessed to me for his trespass, should determine and threaten to tear down my dwelling over my head, will it be said that a court of equity would be powerless to restrain him from executing his threats, and that I would have no remedy but to suffer the wrong and sue for damages? There are inconveniences and perplexities to which one may be subjected by a trespass such as we are considering, for which a jury could not, under the rules of law, fully compensate him, and we think the provision of our statute broad enough, however the law may have been before its enactment, to authorize a resort to injunction proceedings in such cases. The judgment of the circuit court is affirmed. All concur.

AFFIRMED.